FILED'09 JAN 06 11:17USDC-ORP

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ELAINE L. CHAO, SECRETARY OF
LABOR, UNITED STATES
DEPARTMENT OF LABOR,

        Plaintiff,

v.

WESTSIDE DRYWALL, INC., a
corporation; and HOHSEN SALEM, and
SHIRINE SALEM, individuals,

        Defendants.

Civ. No. 08-6302-AC

OPINION AND ORDER

---

ACOSTA, Magistrate Judge:

*Introduction*

The Secretary of the United States Department of Labor ("the Secretary") brings this action against defendants Westside Drywall, Inc., Hohsen Salem, and Shirine Salem (collectively

OPINION & ORDER        1        {JVA}

"Defendants") under the Fair Labor Standards Act ("FLSA") for injunctive relief, damages, and liquidated damages for unpaid minimum wages and unpaid overtime compensation to fifty-two individuals, and for Defendants' failure to maintain proper records of persons Defendants employed and paid. Defendants move to compel production of "fully unredacted copies of (1) all statements and summaries of statements taken from all of the claimants identified on Exhibit A to the complaint, and (2) all documents relied on by Plaintiff to calculate the amount of damages each has claimant allegedly suffered." Defs.' Motion 2. The Secretary relies upon the informant's privilege to oppose Defendants' motion and support her motion for protective order.

Defendants may obtain copies of the statements of those claimants of the fifty-two claimants listed in Exhibit A that are no longer in the United States or who cannot be located by the parties, because Defendants have sufficiently demonstrated a compelling need for those statements. However, the copies of those statements will be redacted of any information that discloses that any claimant complained to or initiated a complaint with DOL regarding Defendants' pay practices. Furthermore, Defendants may obtain from the Secretary unredacted copies of all the statements the Secretary obtained during her investigation if the Secretary does not properly invoke the informant's privilege within the time period and in the manner consistent with this opinion and order. Accordingly, Defendants' motion to compel is granted in part and denied in part and the Secretary's motion for protective order is granted in part and denied in part.

*Background*

Defendants are a drywall construction company and its two owners based in Hubbard, Oregon, approximately thirty miles south of Portland. In April 2007 the Secretary began an investigation of Defendants' pay practices and eighteen months later, in October 2008, the Secretary

filed its FLSA complaint against Defendants. Attached to the Secretary's complaint as Exhibit A is a two-page list that contains the names of fifty-two persons the Secretary claims Defendants employed but failed to properly pay and for whom Defendants did not maintain proper records, all in violation of the FLSA.

The instant motion concerns Defendants' motion to compel unredacted versions of the statements made by forty-three of the fifty-two claimants, and the wage calculations for each claimant, that the Secretary produced in redacted form among the 1,251 pages of documents she initially provided to Defendants. Specifically, the redacted versions of the statements omitted claimants' names, dates and hours worked, and jobs worked; as well as the names of coworkers and supervisors, and names mentioned of defendant Westside Drywall's employees. Defs.' Memo 2-3. The Secretary states that she omitted the specific claimant's name from each of the forty-three statements "to protect the identity of the witnesses" and other information "that could reasonably be used to identify the witness." Secretary's Memo 2. The worksheets omitted claimants' names, and the job numbers and job locations on at least some of the produced documents. The worksheets the Secretary produced purportedly show the "specific calculations . . . [of the] amount of back wages due to each of the individuals identified in Exhibit A." Secretary's Memo 2.

Defendants argue that unredacted versions of the witness statements are necessary because "[w]ithout access to the redacted information, Defendants are unable to compare the information in the witness statements with Defendants' records to check their accuracy." Defs.' Memo 3. Defendants also argue that they cannot use depositions to "test the witnesses for truthfulness" by comparing specific statements to each witness's deposition testimony. *Id.* Regarding the worksheets, Defendants state that the redacted versions "mak[e] it impossible" to compare the

worksheets to their records to verify whether these jobs were Westside Drywall's jobs, which subcontractor worked the specific job, and the amount of time a specific claimant spent on each job. *Id.* Without the unredacted versions, Defendants claim they are unable to determine whether the Secretary's calculations for each claimant contain inaccuracies. *Id.* Thus, Defendants conclude, without access to the redacted information they cannot defend against the Secretary's claims. *Id.*

The Secretary objects to Defendants' proposed discovery and seeks a protective order because "the identities of the individuals who gave statements to the [DOL] during the course of the investigation and the statements themselves are protected from disclosure by the government informant's privilege." Secretary's Memo 3. Relying on this "well-recognized" privilege, the Secretary asserts that disclosure of cooperating witnesses' identities "would interfere with the Secretary's ability to investigate violations of the [FLSA]." Secretary's Memo 3. The Secretary points to the upcoming depositions that Defendants have scheduled of some of the workers allegedly owed back pay, and contends that Defendants will be able to question each witness about all the redacted documents to determine whether each witness cooperated in the investigation. *Id* at 2-3. The Secretary concludes by asserting that Defendants "have not shown that their need for that information outweighs the privilege," and that Defendants should be prohibited "from inquiring about the identities of the informants or seeking to obtain their statements during the discovery phase of this case." Secretary's Memo 3.

*Standards*

"What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59

(1957). The privilege's purpose is "the furtherance and protection of the public interest in effective law enforcement." *Id.* By preserving the anonymity of citizens who provide information, the privilege encourages citizens to perform their obligation of communicating to law enforcement their knowledge of the commission of crimes, *id.*, and to "'make retaliation impossible.'" *Brock v. On Shore Quality Control Specialists, Inc.*, 811 F.2d 282, 284 (5th Cir. 1987), quoting *Continental Finance & Loan Co. of West End*, 326 F.2d 561, 564 (5th Cir. 1964). The informant's privilege may be used to conceal the names of claimant-employees who filed complaints that precipitated an FLSA action brought by the Secretary of Labor. *Does I Thru XXIII v. Advanced Textile Corporation*, 214 F.3d 1058, 1072 (9th Cir. 2000) (applying privilege in private FLSA action). It applies "whether the DOL solicited statements from an employee or the employee made a complaint to the DOL . . . [and it] applies to current as well as former employees of a company whose workers have communicated with DOL." *Martin v. New York City Transit Authority*, 148 F.R.D. 56, 63 (E.D.N.Y. 1993) (citations omitted). *Accord Martin v. Albany Business Journal*, 780 F. Supp. 927, 937 (N.D.N.Y. 1992) (rejecting proffered distinction between "people who give information" and "informants" to determine the applicability of informant's privilege). It also has been held to apply to the statements themselves. *Shultz v. Farino Excavating Company*, 55 F.R.D. 346, 347 (E.D. Mich. 1972), citing *Wirtz v. B.A.C. Steel Products, Inc.*, 312 F.2d 14 (4th Cir. 1963); *Mitchell v. Johnson*, 274 F.2d 394 (5th Cir. 1960).

The privilege's purpose defines its scope. If disclosure of the contents of a communication will not reveal the identity of an informer, then the privilege does not preclude disclosure of the communication. *Roviaro*, 353 U.S. at 60. Similarly the privilege does not apply to bar disclosure of the identity of an informer if the identity already is known or been disclosed to those who might

have cause to retaliate against the informer. *Id.*

However, even information within the scope of the privilege may be discoverable. "Where the disclosure of an informer's identity, or of the contents of his communications, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61. Some courts refer to this exception as the "balancing of interests" test, which, in the context of an FLSA action, requires a balancing of "'the public's interest in efficient enforcement of the Act, the informer's right to be protected against possible retaliation, and the defendant's need to prepare for trial.'" *Brock*, 811 F.2d at 283, quoting *Hodgson v. Charles Martin Inspectors of Petroleum*, 459 F.2d 303, 305 (5th Cir. 1972). *See also Chao v. Brumfield Construction*, No. C07-821RSL, 2008 WL 192894, at *1 (W.D. Wash. Apr. 28, 2008) (recognizing, in an FLSA case, that "the court must balance a litigant's need for the information against the public interest in preventing disclosure of the informant's identity."). Other courts have viewed the privilege itself as a "qualified privilege," which must "yield" where identification of the informant or a communication is essential to a "balanced measure of the issues and the fair administration of justice." *Dole v. Local 1942, Intern. Broth. of Elec. Workers, AFL-CIO*, 870 F.2d 368, 372 (7th Cir. 1989). In either case, once the government asserts the privilege and the information is within the privilege's scope, the opposing party bears the burden of showing a "compelling need" for the information requested. *Brumfield Construction*, 2008 WL 192894, at *1 (exception to privilege); *Dole*, 870 F.2d at 373 (qualified privilege).

*Discussion*

1. The Secretary has not properly invoked the privilege.

Defendants contend that to properly invoke the informant's privilege, the Secretary must

lodge a formal claim of privilege through "the head of the department which has control over the matter, after personal consideration by that officer," and that the Secretary has not done so here. Defs.' Memo 9-10. Government privileges must satisfy "specific, formal requirements for proper invocation." *Albany Business Journal*, 780 F. Supp. at 932. Indeed, the Supreme Court established these requirements over fifty years ago: "The privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party. It is not to be lightly invoked. There must be formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *United States. v. Reynolds*, 345 U.S. 1, 7-8 (1953). *Accord Chao v. Raceway Petroleum, Inc.*, 2008 WL 2064354, No. 06-3363, at *4 (D.N.J. May 14, 2008). Courts since have reaffirmed that all government privileges, regardless of type, must satisfy these formal requirements to be properly invoked. *United States v. O'Neill*, 619 F.2d 222, 225-26 (3d Cir. 1980) (analyzing assertion of executive privilege); *Albany Business Journal*, 780 F. Supp. at 932 ("[T]he informant's privilege, being a governmental privilege, is subject to the aforementioned strict requirements for formal invocation.").

The *Reynolds* decision established the "agency head requirement:" the privilege must be asserted by the head of the agency that seeks to rely upon it. *Marriott Intern. Resorts, L.P. v. United States*, 437 F.3d 1302, 1306 (Fed. Cir. 2006). Although there is some disagreement among the courts, the general rule is that an agency head may delegate to a high-ranking subordinate the responsibility for invoking a government privilege. *Id.* at 1306-08 (finding as proper IRS Commissioner's delegation to Assistant Chief Counsel responsibility for invoking deliberative process qualified privilege). *But see Scott Paper Co. v. United States.*, 943 F. Supp. 501, 502 (E. D. Pa. 1996) (rejecting delegation by agency head, IRS Commissioner, to high-ranking subordinate,

IRS Associate Chief Counsel, as appropriate to invoke the deliberative process privilege). Delegation and assertion of the privilege must be in writing. *O'Neill*, 619 F.2d at 225-26 (noting that an affidavit is required); *Marriott Intern. Resorts, L.P.*, 437 F.3d at 1304, 1308 (citing with approval IRS Commissioner's "delegation order" and the agency's "care in the delegation process").

Here, the Secretary filed no written assertion of the informant's privilege, submitted no written delegation to a high-ranking subordinate of the responsibility for asserting the privilege, and provided no affidavit or declaration that she or anyone on her behalf conducted a careful review of the documents at issue to determine whether the informant's privilege applies to some or all of the documents that Defendants seek. In *Marriott International Resorts, L.P.*, the court described as an "excellent example" the process utilized by the government to assert the privilege: a delegation order that expressly stated the scope of the delegated authority, and provided detailed criteria for claiming the privilege regarding the subject documents, as well as a delegation order to a high-ranking subordinate with expertise in the privilege at issue and responsibility for administering and evaluating the agency's disclosure policies but who was not directly involved in the dispute. 437 F. 3d at 1308.

By contrast, the Secretary in this case provided only the declarations of a wage and hour investigator and the attorney of record in the case, neither of which, by level of authority or content, satisfies the "strict requirements for formal invocation" of the informant's privilege. A field investigator is not an agency head or a "high-ranking subordinate" to whom the agency head may appropriately delegate, and a government attorney is precisely who should not be asserting a government privilege. *See Albany Business Journal*, 780 F. Supp. at 933 n.9 ("'To permit any government attorney to assert the privilege would derogate [the purposes behind the formal claim

requirement].'"), quoting *Pierson v. United States*, 428 F. Supp. 384, 395 (D. Del. 1977).

The Secretary implicitly acknowledges the inadequacy of her showing here by stating the declaration of the Wage and Hour Division Administrator in the DOL's national office "can be obtained if it is requested[.]" Secretary's Memo 5 n.5. The offer is troubling because it suggests the Secretary believes that the informant's privilege routinely applies to any FLSA action she decides to bring, and that assertion of the privilege is simply perfunctory and pro forma. It is not; if it were, then *Roviaro* and the multitude of cases that have followed its rule and applied its criteria in the past fifty years would be superfluous. Clearly, and as the Secretary's offer implicitly concedes, the cases establish the contrary proposition. *See, e.g., O'Neill*, 619 F.2d at 225 (finding "unsatisfactory" invocation of governmental privilege by attorney instead of department head, absence of affidavit, failure to show invocation by responsible public official who personally examined documents and determined that nondisclosure was required, and failure to designate the specific documents to which the privilege applied); *Marriott International Resorts*, 437 F.3d at 1308 (acknowledging that agency head may delegate responsibility for invoking informant's privilege as long as guidelines on the use of the privilege are provided).

The Secretary provides no explanation for her failure to provide in the first instant the required written assertion of the privilege, a failure made more inexplicable given that the privilege and its requirements as so well established and that the DOL has brought many FLSA suits over the years. *See Albany Business Journal*, 780 F. Supp. at 936 ("The court notes at the outset the considerable case precedent in which the informant's privilege has been applied to FLSA cases[.]"). Furthermore, the Secretary's failure to invoke the required process here is particularly problematic because she already has disclosed to the Defendants the names of fifty-two persons she claims are

owed back pay, forty-three of whom apparently provided statements as to which she asserts the informant's privilege. Yet, neither she nor an appropriate delegatee followed any process to determine whether and to what extent the informant's privilege applied to the statements of those she has identified to Defendants.

In sum, the Secretary has not properly invoked the informants' privilege and, thus, the privilege does not apply to the documents that are the subject of Defendants' motion to compel and the Secretary's motion for protective order. As the court observed in *Albany Business Journal*, "[t]hese are not merely technical requirements. Rather, their purpose is to insure that the privilege is claimed by someone . . . with sufficient authority and responsibility so that the court can rely upon his judgment the the claim was prudently invoked." 780 F. Supp. at 932-33. A "blind assertion of the privilege . . . totally defeats the purpose behind the formal claim requirement," because there will be instances in which the privilege need not be invoked or only partially invoked. *Id.* at 936. No record exists in this case upon which to conclude that the privilege's strict requirements have been observed and applied to make such a determination. Accordingly, the informant's privilege does not apply to the documents Defendants seek.[1]

2. The privilege does not apply to some of the documents sought.

Defendants seek two types of documents. First, they want unredacted copies of statements from the claimants, not from "informants." Second, they want redacted copies of worksheets showing each claimant's unpaid wages. Defendants' request requires the court first to determine whether statements from claimants are materially different from informants' statements for purposes

---

[1] However, as explained below, the Secretary will be permitted additional time to properly invoke the privilege and to provide the court and Defendants with sufficient documentation of proper invocation.

of the informant's privilege. If there is no material distinction between statements of informants and statements of claimants, the court must then decide whether the Secretary's disclosure of the claimants' identities vitiates the privilege.

>   *a. Regardless of source, statements given to the Secretary of Labor during an FLSA investigation are within the scope of the informant's privilege.*

Defendants seek unredacted versions of "witness statements" that the DOL investigator took from most of the fifty-two claimants. Defendants assert that they do not seek "the names of DOL's informants" but instead seek "disclosure of the statements of the claimants[.]" Defs.' Memo 5. *See also* Defs.' Memo 6 ("Defendants want to make very clear what they are requesting: Defendants seek unredacted copies of the witness statements and worksheets to the extent they relate to a claimant who has been identified on Exhibit A to the Complaint."). Defendants claim that such information "is simply not within the scope of the privilege." Defs.' Memo 5.

Whether given as a witness, an informant, or a claimant, courts generally read the informant's privilege to protect all three groups of individuals, as they all are persons who provide information to the DOL that leads to or is in furtherance of a DOL investigation. For example, in *Does I Thru XXIII*, the Ninth Circuit allowed individual plaintiffs in a private FLSA action who feared retaliation to use pseudonyms to assert wage claims against their employer. Some decisions in this area create confusion on the point, as they often have conflated the informant and witness categories. *See also Brock*, 811 F.2d at 284 (rejecting defendant's proposed distinction between informers" and "those who have knowledge" of facts); *Brumfield Construction*, 2008 WL 192894, at *1, *2 (referring to the same individuals as "individuals who provided statements" and as "informants" and as "co-operating witnesses"). This conflation blurs the analogous but not identical definitions of the two terms: an "informant" is "[o]ne that gives information[;] one who informs against others," while a

witness is "[o]ne who can give a firsthand account of something seen, heard, or experienced[;] one who furnishes evidence." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 899, 1976 (4th ed. 2000). However, other decisions make a clear distinction between claimants and informants, finding that the privilege does not necessarily shield claimants or their statements. *See, e.g., Mitchell v. Roma*, 265 F.2d 633, 635-38 (3d Cir. 1959) (citing cases in which the names and statements of improperly paid employees were produced, and noting that "[a] distinction must be drawn between telling an employer which employees were underpaid and who gave the information about underpayment.").

The better rule is that a statement given by any individual, whether claimant, employee, or witness, to the DOL during an investigation of an employer's pay practices is within the scope of the informant's privilege. See *Albany Business Journal*, 780 F. Supp. at 937 ("Given the protective purpose of the informant's privilege, [defendant's] purported distinction between 'informant's' and 'people who give information' is inapposite.") Here, the statements Defendants seek are within the scope of the privilege because the identified claimants are persons who had knowledge about matter the Secretary was investigating and they gave their statements in the course of that investigation. Ultimately, those statements led to or contributed to the Secretary's decision to file the instant suit against Defendants. Thus, the privilege applies to statements made by claimants.

*b. The statements here are still within the scope of the privilege even though the Secretary disclosed the claimants' identities to Defendants.*

Defendants assert that even if the informant's privilege covers the statements at issue, the privilege no longer applies because the Secretary disclosed the claimants' identities when she attached Exhibit A to her Complaint. That exhibt lists the names of fifty-two persons whom the Secretary characterizes as Defendants' "employees." Complaint 2, 4. The informant's privilege

protects the public interest in effective law enforcement by preserving an informant's anonymity, but if the identity of the informant already is known to "to those who would have cause to resent the communication, the privilege is no longer applicable." *Roviaro*, 353 U.S. at 59, 60. The cases since the *Roviaro* decision have reaffirmed this fundamental principle. *See, e.g., Dole v. Local 1942*, 870 F.2d at 375(acknowledging that *Roviaro* "impliedly endorses the notion that identifying the informants is tantamount to waiver of the privilege"); *Albany Business Journal*, 780 F. Supp. at 940 ("The informant's privilege is waived when the moving party legitimately learns the identity of the informant at issue.").

The Secretary disclosed the identities of fifty-two persons she identified as "employees" but not as "informants" and Defendants have produced no evidence to suggest that they know that any of those employees also are informants. This distinction is material to the proposition Defendants advance here, because the decisions generally hold that the Secretary's disclosure of employee names and the identification of individuals who have "knowledge" of the facts are not disclosures of informants' identities. *Dole v. Local 1942*, 870 F.2d at 375 ("[I]t cannot be assumed that the privilege has been waived where the Secretary's answer [to an interrogatory] did not even disclose the identity of any informers but only named persons with 'knowledge' of this matter and simultaneously reasserted the informer's privilege."); *Albany Business Journal*, 780 F. Supp. at 940-41 (recognizing that the employer's knowledge of the identities of employees who gave statements to the DOL is not "equivalent to knowledge of which of those persons were informers within the context of the privilege.").

Here, the Secretary disclosed the names of Defendants' employees who, according to the Secretary, were not properly paid in violation of the FLSA; she did not identify any of these fifty-two

individuals as "informants." As discussed above, the informant's privilege covers both the identities of informants as well as statements given to or obtained by the DOL from claimants, employees, witnesses, and informants when the statements are obtained in the course of a DOL investigation. The Secretary's disclosure does not necessarily waive the informant's privilege regarding the claimants' statements. *See, e.g., Dole v. Local 1942*, 870 F.2d at 375 (Secretary of Labor's disclosure of names of persons having knowledge of the facts does not waive informant's privilege); *Herman v. Lipe*, 1997 WL 880759, No. 97-3015, at *2 (C.D. Ill. Nov. 13, 1997) (same, and noting that the privilege extends "both to the informant's identity and the contents of his communication with the government if those contents tend to reveal the informant's identity"). Thus, the court must determine whether the Defendants have made a sufficient showing under the balancing of interests test to obtain the statements they seek.

*c. The Defendants have shown a compelling need to obtain some of the statements they seek.*

In establishing the informant's privilege the Supreme Court also included an exception to that rule:

> A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations, the trial court may require disclosure[.]

*Roviaro*, 353 U.S. at 60-61. No fixed rule with respect to disclosure is justifiable; instead, the court must balance the public interest in protecting the flow of information against the other party's right to prepare a defense. *Id.* at 63. *Accord Usery v. Local Union 720, Laborers' Intern. Union of North America*, 547 F.2d 525, 528 (10 th Cir. 1977) (government's interest in confidentiality must be weighed against the opposing party's need for disclosure in the preparation of its defense). The party

seeking to apply the exception has the burden to prove "specific and justifiable need for the discovery sought." *Albany Business Journal*, 780 F. Supp. at 937.

Courts since have applied the exception in FLSA cases, but in doing so have often commented that the names of informers are irrelevant to whether the employer properly paid its employees and otherwise complied with the Act's requirements. *See, e.g., Dole v. Donovan v. Fasgo, Inc.*, No. 81-0129, 1981 WL 2402, at *2 (E.D. Pa. Oct. 6, 1981) ("It is perfectly plain that the names of informers are utterly irrelevant to the issues to be tried by the trial court. The question is whether, with respect to certain employees, the Act's requirements as to payment of hourly wages were violated."). The courts also have been careful to guard the identity of informants by refusing to permit employers to obtain information that could allow the employer to determine which of its employees acted as informer. *See, e.g., Albany Business Journal*, 780 F. Supp. at 940-41 (declining to order production of statements of individuals identified by the Secretary as employees but not informants, because to do so "might reveal [the employee] as an informer").

In this case, the balance weighs in favor of Defendants, at least as to statements given to the DOL by claimants who either no longer are in the United States or cannot be located. As Defendants point out, "many" of the claimants are "no longer in the country and will not be available for depositions or trial," Defs.' Memo 3, and the Secretary does not dispute this fact. Defendants have stated that they do not seek the identities of informants who initially brought this matter to the Secretary's attention. Furthermore, the Secretary already has disclosed to Defendants the identities of the employees the Secretary claims were not paid in compliance with the FLSA and for whom the Defendants seek information. As to those individuals, the Defendants seek only information that will allow them to link the claimants to specific jobs and to determine the pay each claimant

allegedly is owed. Defendants do not seek information beyond this, including information that would identify any claimant as an informant. With respect to those claimants no longer in the United States or who cannot be located, Defendants have no other way to obtain that information – it is simply not available to them except through the statements these claimants gave to DOL before they became unavailable.

Applying the exception in this weight appropriately balances the competing interests. The government's interest in protecting the identities of informants is safeguarded because that information will not be disclosed. There is no risk of improvidently revealing the claimant employees' identities because the Secretary already has provided Defendants with their names. The Defendants obtain only that information essential to prepare their defense and nothing more, including any information that might uncover which employee claimants also were informants. *See, e.g., Raceway Petroleum, Inc.*, 2008 WL 2064354, at *4 (acknowledging that some courts have allowed the production of witness statements that do not reveal the identity of the informers). Fairness is served because Defendants will obtain necessary information to their defense regarding the specific jobs, hours worked on those jobs, locations of those jobs, and supervisors on those jobs of those employees who no longer are in the United States or who cannot be located, which Defendants likely will not be able to otherwise obtain. And, as to those claimants still available to Defendants for deposition, they will be required to depose those claimants and work through with those deponents the redacted statements the Secretary already has provided, consistent with the case decisions. *See, e.g., Brock*, 811 F.2d at 283-84; quoting *Hodgson v. Charles Martin Inspectors of Petroleum*, 459 F.2d 303, 306 (5th Cir. 1972) (if alternative means exist for obtaining the information, the privilege will apply, even if the "'cost of taking depositions of all the individuals

involved would be virtually prohibitive'"); *Albany Business Journal*, 780 F. Supp. at 939 (citing cases holding that if an employer "can obtain the same information without necessitating a waiver of the informant's privilege, then a waiver should not be granted").

As for the worksheets, Defendants are entitled to copies of these documents for those claimants who no longer are in the United States or who cannot be located. Because these claimants are not available, Defendants cannot, at deposition, review the worksheets with any of them to determine which of them corresponds to which worksheet. Furthermore, the Defendants have stated that they regularly use subcontractors to perform their contracts, which could cause the claimants confusion about the identity of who actually employed them. Because Defendants cannot cover this issue with the unavailable claimants, they have no other way to reliably obtain this information.

Accordingly, the exception thus applies. As to those claimants not still in United States or who otherwise cannot be located, Defendants have demonstrated a compelling need to obtain their statements because they cannot obtain the information from those claimants. However, those statements must be redacted to leave only information regarding the jobs worked, hours worked for each job, location of each of job, and the supervisors on each job. Specifically, the Secretary must redact those statements to ensure that any information that might implicate an individual claimant as an "informant" is not included in any statement. The exception applies only as necessary, to the statements of those claimants from whom Defendants cannot get information through deposition, and then only in redacted form to ensure that no claimant is identified as an informant.

*Order*

The Secretary must produce copies of the statements and worksheets for those claimants who no longer are in the United States or who cannot be located, redacted to include only the name of the

claimant, the jobs worked by the claimant, the dates and hours worked on each job, and the names of the supervisor on each job. All other information, including information identifying any claimant as one who filed or initiated a complaint with DOL or that could be used to make such a determination, must be redacted from the copies given to Defendants. The Secretary must make every reasonable effort to provide these copies to Defendants in time for their use by Defendants at the upcoming scheduled depositions, but in no event later than fourteen (14) days from the date of this opinion and order.

The Secretary also will have twenty-one (21) days from the date of this order to properly invoke the informant's privilege and provide the court and Defendants' counsel with appropriate supporting documentation. That invocation must be consistent with this opinion and the cases cited in this opinion in which the proper process for invoking the privilege is described. If the Secretary does not submit this documentation within the twenty-one day period, the informant's privilege shall be deemed waived as to all unredacted statements and worksheets for all claimants in this matter.

Accordingly, Defendants' motion to compel is GRANTED in part and DENIED in part, and the Secretary's motion for protective order is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

DATED this 5th day of January, 2009.

JOHN V. ACOSTA
United States Magistrate Judge