LAWRENCE BREWSTER, Regional Solicitor
BRUCE L. BROWN, Associate Regional Solicitor
EMAIL: brown.bruce.l@dol.gov
MATTHEW L. VADNAL, Trial Attorney
EMAIL: vadnal.matthew@dol.gov
Office of the Solicitor, U.S. Department of Labor
1111 Third Avenue   Suite 945
Seattle, Washington   98101 - 3212
(206) 553-0940 EX 8002
FAX:  (206) 553-2768

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ELAINE L. CHAO, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,<br>    Plaintiff,<br>v.<br><br>WESTSIDE DRYWALL, INC., a corporation; and MOHSEN SALEM, and SHIRINE SALEM, individuals.<br><br>    Defendants. | CIVIL ACTION<br><br>CASE NO. 08-6302-TC<br><br>**SECRETARY'S RESPONSE TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

COMES NOW, the Secretary of Labor, the Plaintiff in this matter, by and through her undersigned counsel of record, and files this Response to the Defendants' Motion for Summary Judgment.

## PROCEDURAL POSTURE

The Secretary of Labor filed her Complaint in this matter on October 1, 2008.  On March 16, 2009, the Court granted an unopposed motion to extend the time for completion of discovery and established the following deadlines:

July 1st – Filing Joint Alternative Dispute Resolution (ADR) Report.

August 3d – Completion of Discovery and Filing of Dispositive Motions.

SECRETARY'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT – Page 1 of 17

August 31st – Lodging of a Joint PreTrial Order.

On three occasions, in January, February and April, the Defendants conducted depositions in Hubbard and Portland. The Defendants deposed 19 individuals, 17 were present or former workers and two were Wage and Hour Investigators, Katy Bayless with the Oregon Bureau of Labor and Industries (BOLI) and Karen Clark with the U.S Department of Labor Wage Hour office in Portland. The later two were deposed on April 7th and April 8th.

Our discovery plan was to complete the Defendants' depositions first and then the Secretary's. (Declaration of Matthew L. Vadnal, ¶7, EX A). Following that plan on April 17, Defendants' counsel was requested via email to provide dates for conducting the Secretary's depositions of Westside's management agents. (Vadnal Dec., ¶7, EX D). The Defendants did not respond to the request before they filed their Motion for Summary Judgment on April 28th.

The Defendants' counsel did write letters to our office requesting the relief sought in their motion. Contrary to counsel's assertion, the undersigned counsel did not refuse to dismiss some of their claims. The concern was the timing of the requested relief. The names of four individuals who failed to appear for their depositions but who were willing to appear if their depositions were rescheduled were provided to the Defendants' counsel. The names of three workers who were in the area but who had not been served were also provided. A willingness to assist the Defendants' counsel in contacting the workers and getting them to their depositions - as was done previously – was also expressed. (Vadnal Dec., EX B).

A second letter repeated much of what was said in the first. Again, the sequence of the litigation process was the main concern. The second letter stated, "**We are not ruling out the possibility of agreeing to your requests**; however, dismissal of claimants, defendants, and wage claims are matters to be discussed **during the mediation phase of this case**." (emphasis added).

SECRETARY'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT – Page 2 of 17

(Vadnal Dec., EX C).

## APPLICABLE LAW

**I. THE FEDERAL FAIR LABOR STANDARDS ACT (FLSA).**

In 1938, Congress enacted the FLSA to protect covered workers from "substandard wages and oppressive working hours." Barrentine v. Arkansas- Best Freight Sys., Inc., 450 U.S. 728, 739, 101 S. Ct. 1437, 1444, 67 L.Ed.2d 641 (1981). The provisions of the Act are remedial and humanitarian in purpose, Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 597, 64 S. Ct. 698, 88 L. Ed. 949 (1944), and courts must give the Act a liberal construction to achieve its goals. Mitchell v. Empire Gas Engineering Co., 256 F.2d 781, 784 (5th Cir. 1958); see also Klem v. County of Santa Clara, 208 F.3d 1085, 1089 (9th Cir. 2000) (FLSA "is to be liberally construed to apply to the furthest reaches consistent with Congressional direction."). For the last 70 years, American employers have been trying to find ways to escape the FLSA's requirements.

> The overtime provision of the FLSA provides that,
>> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed. 29 U.S.C. 207(a)(1).

Any employer who violates the provisions of the Act "shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

**II. SUMMARY JUDGMENT.**

Summary judgment should only be granted when, viewing the evidence in the light most

favorable to the non-moving party, no genuine issues of fact remain and the moving party is entitled to judgment as a matter of law. FRCP 56; Cleary v. News Corp., 30 F.3d 1255, 1259 (9th Cir. 1994). The moving party has the burden of informing the court of the basis of its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53 (1986). The party moving for summary judgment also has the burden of showing the absence of a genuine issue of material fact. Zoslaw v. MCA Distrib. Corp., 693 F.2d 870, 883 (9th Cir. 1982), cert. den. 460 U.S. 1085 (1983). The Court must then resolve all ambiguities and draw all reasonable inferences against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355-56 (1986). Only where the Court concludes that no rational finder of fact can find in favor of the non-moving party should summary judgment be granted. Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1223 (2d Cir. 1994). "On a motion for summary judgment neither [the Ninth Circuit] nor the trial courts are permitted to weigh the evidence, pass upon credibility, or speculate as to ultimate findings of fact." Pepper & Tanner Inc. v. Shamrock Broadcasting Inc., 563 F.2d 391, 393 (9th Cir. 1977) (citing Fortner Enterprises, Inc. v. United States Steel, 394 U.S. 495, 506, 89 S.Ct. 1252, 1260 (1969)).

## ARGUMENT

**A. The Secretary's Claims for Willful Violations of the FLSA Are Not Time Barred.**

The statute of limitations is an affirmative defense which the defendant bears the burden of establishing. Payan v Aramark Management Services, 495 F.3d 1119, 1122 (9th Cir. 2007). In every civil case, the defendant bears the burden of establishing each element of an affirmative defense. Tovar v U.S.P.S., 3 F.3d. 1271, 1284 (9th Cir. 1993). It is well-settled that statutes of limitations are affirmative defenses, not pleading requirements. Wyatt v.Terhune, 315 F.3d 1108, 1117-18 (9th Cir. 2003). An employer-defendant bears the burden of proving the

SECRETARY'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT – Page 4 of 17

expiration of the statute of limitations. Ebbert v. Daimler-Chrysler, 319 F.3d 103, 108 (3d Cir. 2003).

An action to recover back-wages for an FLSA violation is barred unless commenced within two years of the date of violation, though the statute of limitations is extended to three years for willful violations. 29 U.S.C. § 255(a). The Secretary can establish a willful violation by showing that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute. McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S. Ct. 1677, 100 L.Ed.2d 115 (1988); Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 105 S. Ct. 613, 83 L.Ed.2d 523 (1985). Evidence that an employer told his employees to be untruthful about how and how much they were compensated establishes that violations were willful under the FLSA. Chao v. Vidtape, Inc., 196 F.Supp.2d 281, 295 (E.D.N.Y., 2002), cert. den., 540 U.S. 1047 (2003).

There are disputed issues of fact related to whether Defendant acted willfully, and therefore summary judgment is inappropriate. See Cleary, 30 F.3d, 1259 Furthermore, whether the violations were willful partially depends on determining the Salems' knowledge of the FLSA and the measures they took to comply with it, an issue to be developed at their depositions. Finally, to the extent that Defendants' state of mind is relevant to determining willfulness, cases in which a state of mind "is a primary issue generally are inappropriate for summary judgment." Provenz v. Miller, 102 F.3d 1478, 1489 (9th Cir. 1996) (quoting Vaughn v. Teledyne, Inc., 628 F.2d 1214, 1220 (9th Cir. 1980)). For all of these reasons the Court should deny Defendants' motion for summary judgment on the issue of the application of the statute of limitations.

**B. Whether Shirine Salem is an "Employer" Subject to Personal Liability under the Fair Labor Standards Act (FLSA) is a Disputed Matter.**

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "[T]he definition of 'employer' under the FLSA is not limited by the common law concept of 'employer,' and 'is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes.'" Lambert, 180 F.3d at 1012 (quoting Bonnette v. California Health and Welfare Agency, 704 F.2d 1465, 1469 (9th Cir. 1983), overruled on other grounds in Garcia v. San Antonio Metropolitan Transit Authority, 469 U.S. 528 (1985)) and cases cited; Real v. Driscoll Strawberry Assocs., 603 F.2d 748, 754 (9th Cir. 1979). To insure that workers are properly compensated under the law, "[t]he FLSA contemplates several simultaneous employers, each responsible for compliance with the Act." Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668, 675 (1st Cir. 1998) (quoting Falk v. Brennan, 414 U.S. 190, 195 (1973)). Any of these employers who violates the provisions of the FLSA "shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

A person who has "managerial responsibilities" and "substantial control of the terms and conditions of the [employee's] work" is an employer within the meaning of the Act. Falk, 414 U.S. at 195. "Where an individual exercises 'control over the nature and structure of the employment relationship,' or 'economic control' over the relationship, that individual is an employer within the meaning of the Act." Lambert, 180 F.3d at 1012 (citations omitted). Or, as put more emphatically, "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983), abrogated on other grounds as recognized in Hanley v.

SECRETARY'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT – Page 6 of 17

Giordano's Restaurant, Inc., 1995 WL 442143 (S.D.N.Y. 1995). The rule that individual corporate officers may be found to be "employers" under the FLSA, and therefore liable for back wages and liquidated damages is settled law. See, e.g., Baystate, 163 F.3d at 677-78 and n.12-13; U.S. Dep't of Labor v. Cole Enters. Inc., 62 F.3d 775, 778-79 (6th Cir. 1995); Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 965-66 (6th Cir. 1991); Donovan v. Grim Hotel Co., 747 F.2d 966, 971-72 (5th Cir. 1984); Donovan v. Sabine Irrigation Co., 695 F.2d 190, 194-95 (5th Cir. 1983); see also Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 589 (9th Cir. 1993) (Fletcher, J., dissenting) ("There can be no question that an individual can be personally liable as an employer under the FLSA.").

Elements weighing in favor of finding employer status of an individual corporate officer include "the significant ownership interest of the corporate officers; their operational control of significant aspects of the corporation's day to day functions, including compensation of employees; and the fact that they personally made decisions to continue operating the business despite financial adversity and the company's inability to fulfill its statutory obligations to its employees." Baystate, 163 F.3d at 677-78 (citing Agnew, 712 F.2d at 1511-14); see also Lambert, 180 F.3d at 1012 . In Patel v. Wargo, 803 F.2d 632, 634 (11th Cir. 1986), the Eleventh Circuit observed also that "[m]ost cases finding corporate officers liable for FLSA violations have involved company-wide underpayment of large numbers of workers." 803 F.2d at 638. In Agnew, individual liability was found where, inter alia, the corporate officers supervised corporate cash flow and made payroll arrangements and decisions about layoffs and employees' hours, particularly during a difficult economic time for the company. See Baystate, 163 F.3d at 678 n.12 (citing Agnew, 712 F.2d at 1511). The Baystate court described the policy rationale for this "economic reality" analysis as follows:

SECRETARY'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT – Page 7 of 17

> Agnew's economic reality analysis focused on the role played by the corporate officers in causing the corporation to undercompensate employees and to prefer the payment of other obligations and/or the retention of profits. In addition to direct evidence of such a role, other relevant indicia may exist as well-for example, an individual's operational control over significant aspects of the business and an individual's ownership interest in the business. See, e.g., [Agnew, 712 F.2d] at 1511-14. Such indicia, while not dispositive, are important to the analysis because they suggest that an individual controls a corporation's financial affairs and can cause the corporation to compensate (or not to compensate) employees in accordance with the FLSA.

Baystate, 163 F.3d at 678.

In the present case, Shirine Salem is the daughter of the Westside's President, Mohsen Salem. She told the Wage Hour Investigator that she was the corporation's secretary and a 10% owner. (Clark Dec., ¶3) During pre-litigation discussions, she displayed an in-depth knowledge of all of Westside's operations including its compensation policies. Indeed, during a July 2008 meeting, she was the only person present to speak on the corporation's behalf. (Vadnal Dec., ¶5) As a corporate officer and part-owner alone, she would be liable as employer under the FLSA. Her exact role in the corporate management will be explored during her deposition which has yet to be taken. As such, there are disputed facts regarding her role and therefore summary judgment is inappropriate.

## C. There is Evidence to Support the Claims of the Employee-Claimants.

The Defendants' have more for summary judgment with respect to the back wage claims that the Secretary has made with respect to the following Westside employees:

**1. Sabas Fernandez-Hernandez.** Mr. Fernandez-Hernandez's deposition testimony conflicts with the information which he provided to the Wage Hour Investigator. (herein after "WHI") During his deposition, he testified that he began working for Westside in March 2008. Before that, he did drywall work with another company and also worked for a meat packer and a janitorial service. (Fernandez-Hernandez Deposition, pp 13 – 23). However, in a signed

statement he provided to the Wage Hour Investigator, he stated that he worked at Westside for 10 months in 2005 and 2006 and provided details about his employment that only someone who worked there would know. (Clark Dec., EX A)   He continued to cooperate with the WHI when she was seeking to verify assertions that Westside's attorney made during pre-litigation conferences. (Clark Dec.¶3)   Another witness, Alan Garcia Bogarin, who last worked for Westside in 2006, testified that Sabas worked there when he was there (Alan Bogarin's Dep. 81: 12 – 22).

Mr. Fernandez-Hernandez began his deposition – without being asked by the Defendants' counsel - by stating that he wanted to withdraw his claim. (Fernandez-Hernandez Dep., 5: 21 – 23).   An employee can not, however, waive his entitlement to overtime pay. Brooklyn Bank v. O'Neil, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945); Mumbower v Callicott, 526 F.2d 1183 (8th Cir. 1975).[1]   Because there are disputed facts concerning Mr. Ferndez-Hernandes' employment at Westside, summary judgment is inappropriate.

2. **The Other Employee-Claimants Have Viable FLSA Claims.**

The Defendants have moved for dismissal of other employee-claimants in their Motion for Summary Judgment.  The WHI used the following methodology to compute the back wages for the Employee-Claimants referenced in the Defendants' Memorandum of Law.  They were on the company's payroll and paid at piece rate.  Overtime back wages for Westside's piece rate payroll employees were determined by arriving at an average weekly wage (dividing gross period earnings by total weeks worked), dividing that average weekly rate by an average of total weekly

---

[1] A provision of the FLSA, 28 U.S.C. § 2041, provides that if a claimant refuses to accept the back wages collected on his behalf, the federal government will retain them.

hours worked and multiplying the total overtime hours by .5. The WHI computed back wages for them because all the workers she interviewed told her that everyone at Westside worked 10 or more hours each weekday. Many worked on Saturdays but for a shorter period of time. (Clark Dec. ¶14) Mr. Sabas' reversal in testimony casts a pale over credibility and believability of the other employee-claimants. Other witnesses who have yet to be deposed may provide information about their hours of work

During their depositions, several employee-claimants provided testimony which could establish FLSA back wages in addition to those originally computed by the WHI:

**a. Efren Martinez Carmen** testified that he began working for Westside in 2007 and that he was compensated correctly for all the hours that he worked after that date. (Sec. EX 2; Carmen Dep., 6:21-24; 13:10 – 14:16). The WHI calculated that he was owed $506.48 for work performed in May and June 2007. (Defendants' Exhibit 17: Pages 1 and 18). However, Mr. Carmen also testified that he and an Alex Garcia worked for Westside in 2006. (Sec. EX 2, Carmen Dep., 18: 15-25; 19: 1-20) They worked overtime hours during this time period. Mr. Carmen's testimony establishes that he was a Westside employee. (Sec. EX 2, Carmen Dep., 23: 17-25; 24, 25, 26, 27, 28, 29: 1-5) If this matter proceeds to trial, the Secretary will seek back wages for the work that Mr. Carmen performed in 2006 and add Mr. Alex Garcia as a claimant.

**b. Florencio Diaz Bernabe** could be compensated for his lunch breaks because he took his lunch while he was driving between jobs. (Bernabe Dep., 9: 16 – 24).

**c. Juan Ramirez Reyes** should be compensated for the one hour for each pay period for the time he spent at home completing his time sheet. (Reyes Dep., 23: 4 – 25; 24: 1-3).

**d. Angel Ramos.** The WHI computed back wages of $83.25 for Angel by reviewing

Westside's payroll records which indicated that for two pay periods, overtime was not paid for all hours worked. The FLSA requires that payroll records be accurate.

### D. The Failure of a Claimant to Appear for a Deposition is NOT a Basis for Dismissing His Claim.

The Defendants argue that the claims of the workers who were served with subpoenas but who did not appear for their depositions should be dismissed. They make the same argument with respect to workers who they were unable to depose either because they were out of the country or because accurate contact information was unavailable.

The WHI provided significant assistance to the Defendants' attorneys by providing up-to-date contact information for 40 claimants, serving subpoenas, and contacting several deponents if they were late or did not appear for their depositions. (Clark Dec. ¶4) The Defendants did not depose all of the claimants that they could have. Three claimants who were served with subpoenas but did not appear could have been deposed if their depositions had been rescheduled. Luis Umberto Rodriquez was served with a subpoena for a deposition which was to begin at 9:00 am on Friday, February 6th. He did not appear but instead called the WHI to say that he did not realize that his deposition was to begin at 9:00 am. He offered to appear later that day but Westside's counsel declined his offer. (Clark Dec. ¶8) Sergio Ayala was served with a subpoena but did not appear for his deposition on Friday, February 6th at 1:00 p.m. The WHI spoke to him that afternoon. He said that he had been driving around downtown Portland but could not find a place to park near the office building where his deposition was to take place so he drove home. (Clark Dec. ¶9) Jorge Castillo Rodriquez was served but did not appear for his deposition on January 16th. Later he called the WHI to say that he wanted to be deposed. (Clark Dec. ¶10)

SECRETARY'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT – Page 11 of 17

At least two other claimant-witnesses who had not been served expressed a willingness to be deposed. The WHI provided Westside's attorney with Francisco Ramirez's address in Vancouver, Washington. His deposition was scheduled for February 5th but he was not served with a subpoena. He told the WHI that if he was served, he would appear. (Clark Dec. ¶7) Upon learning that Westside's counsel had been unable to serve Jose Madragon-Gaspar, the WHI contacted him. He was willing to be deposed but was working in Pasco, Washington, and wanted two weeks' notice of the deposition so he could ask his employer for time off from work. (Clark Dec. ¶5) The Secretary is willing to assist the Defendants' counsel with getting the above-said claimant-witnesses to rescheduled depositions.

Westside argues that the claims asserted on behalf of individuals it has been unable to depose must the dismissed because it "has been deprived of the opportunity and ability to defend itself". MEMORANDUM OF LAW, Pages 16 and 17. Westside does not, however, cite any legal precedent to support its argument, presumably, because there is none.

The Defendants' motion to dismiss the claims of the workers who were served with subpoenas but who did not appear for their depositions should be denied. The Defendants' motion to dismiss the claims of workers who they were unable to depose either because they were out of the country or because accurate contact information was unavailable should also be denied.

### E. The Claimants Who Have Been Deposed to Date Can Represent Fellow Workers at Trial.

The Defendants contend that the testimony of deposed witnesses can not be used to establish the back wage claims of other workers who were in their crews and/or performed the same work that they did. Case law decided under the FLSA provides otherwise.

SECRETARY'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT – Page 12 of 17

To establish damages, the Secretary does not have to present testimony from every named complainant. Instead, the Secretary can present a representative sample of employees, and a District Court can use those employees' testimony to establish damages for the entire group. McLaughlin v. Ho Fat Seto, 850 F.2d 586, 589 (9th Cir. 1988) cert. den., 488 U.S. 1040 (1989); see also Reich v. Gateway Press, Inc., 13 F.3d 685, 701 (3rd Cir. 1994) (22 out of 70 employees testified); Donovan v. New Floridian Hotel, Inc., 676 F.2d 468 (11th Cir.1982) (testimony of 23 employees supported an award to 207 employees); McLaughlin v. DialAmerica Marketing, Inc., 716 F.Supp. 812 (D.N.J.1989) (43 out of 393). Courts have ruled that the Secretary of Labor can establish back wages for all the workers in a particular class based on the testimony of a relatively low percentage of the workers in that class. In New Floridian Hotel, Inc., supra. it was 11%; in Dialamerica Marketing, Inc., supra., it was 12%; and in Solid Waste Services, Inc., 733 F.Supp. 895 (E.D.Pa. 1989), it was 22%.

"Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Once the employee "has proved that he has performed work and has not been paid in accordance with the [FLSA]," the fact of damage is certain. Anderson v. Mt. Clemens Pottery, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). Where the only uncertainty is the amount of damage "it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts." Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931). In such a case "[u]nless the employer can provide accurate estimates [of hours worked], it is the duty of the trier of facts to draw whatever

reasonable inferences can be drawn from the employees' evidence ...." <u>Mt. Clemens Pottery</u>, 328 U.S., at 693.

The Secretary has the initial burden of producing sufficient evidence to show the amount of work for which the employee was not properly compensated "as a matter of just and reasonable inference." <u>Mt. Clemens Pottery Co.</u>, <u>supra</u>. In view of the remedial purpose of the FLSA and the employer's statutory obligation "to keep proper records of wages, hours and other conditions and practices of employment," this burden is not to be "an impossible hurdle for the employee." <u>Brock v. Seto</u>, 790 F.2d 1446, 1448 (9th Cir. 1986) (citations omitted).

> [W]here the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, ... the solution ... is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records ...; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the [FLSA].

<u>Id</u>. (quoting <u>Mt. Clemens Pottery Co.</u>, 328 U.S., at 687). Once the Secretary meets that threshold, the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of such inference, and, if the employer fails to produce such evidence, the court may then award damages to the employee, "even though the result be only approximate." <u>Mt. Clemens Pottery</u>, at 687-88.

The Defendants' cite, <u>Marshall v R&M Erectors, Inc.</u>, 429 F. Supp. 771 (D.Del. 1977), to support its position arguing that there were too many different jobs, locations, subcontractors, different hours and different rates of pay to establish a pattern which would allow testifying witnesses to represent non-testifying witnesses. Memorandum of Law, Page 18. In that case, employees left a central location together at the beginning of the work day, worked together during the day, and reported back to a central location at the end of the day.

SECRETARY'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT – Page 14 of 17

The District Court opined that "relatively consistent testimony of several employees can set forth a prima facie case that all employees in the same job classification worked the same number of hours." At that point, the burden shifts to the employer to rebut the Secretary's prima facie case. Id. at 777. The R&M Erectors case is similar to the present case and actually supports the Secretary' position. Workers at Westside reported to the company's facility in Hubbard, Oregon, each morning and were supplied with maps by Westside's supervisors directing to various work sites where they hung, taped or patched drywall or installed insulation.

There is sufficient commonality among the classes of workers who have been deposed to date to establish the hours of work for all those who worked in those cases. Three crew leaders were deposed. Israel Ayala and Martin Ayala lead crews that hung drywall. Carlos Sanchez installed insulation with a partner. The crews' compensation was based on the square footage in the homes they worked on. They were paid in cash by an alleged subcontractor. They worked long days starting at 6:30 a.m. or 7:00 a.m. and ending - conservatively - at 6:30 p.m. They worked on most Saturdays albeit fewer hours than they did during the regular workweek and on some occasions they worked on Sundays. (Sec. EX 5; Israel Ayala Dep., 32:2 – 33:25; 35:21 – 36:22; 47:21 – 49: 13; 55:22 – 56:9) (Sec. EX 6; Martin Guerrero Dep., 54:20 – 56:8; 57:9 – 21; 63:19 – 66:23; 70:9 – 73:16) (Sec. EX 7; Carlos Sanchez Dep., 21:17 – 20; 22:2 – 23:11; 24:19 – 25:10; 29:25 – 32:6). Carlos Sanchez testified that Westside had four or five insulation crews who met at the company's facility in Hubbard each morning between 6:00 and 6:30 a.m. and returned at approximately the same time each evening. (Sec. EX 7; Carlos Sanchez Dep., 49:16 – 52:25).

Four patchers were deposed: Jesus Avila, Alan Bogarin, Juan Torres, and Jorge Zuniga.

They were all paid on an hourly basis. Avila, Bogarin, and Zuniga were paid in cash by a Westside supervisor. Torres was paid by an alleged subcontractor, perhaps because he began his employment as a taper. For the most part, the patchers worked alone although Avila and Bogarin worked as helpers when they began and Bogarin was assigned a helper later in his employment. All four said they began work at 7:00 a.m. The time when the work day ended varied but a conservative estimate was 6:00 p.m. All of them worked on Saturdays although it was a shorter workday of eight hours. Bogarin testified that he worked on two or three Sundays: the rest said they did not work on Sundays. (Sec. EX 8; Avila Dep., 6:2 – 4; 31:4 – 32:20; 33:14 – 35:4; 37:10 – 23; 83:7 – 15) (Sec. EX 9; Bogarin Dep., 16:11 – 15; 25:5 – 23; 32:1 – 25; 40:8 – 9; 41:15 – 25; 42:23 – 45:18; 47:3 – 20; 49:8 – 10; 50:24 – 52:4; 54:21 – 55:15) (Sec. EX 10: Torres Dep.: 13:8 – 22; 14:22 – 15:5; 17:10 – 24; 18:2 – 15; 20:6 – 21:11; 22: 2 – 3) (Sec. EX 11; Zuniga Dep., 15:4 – 24; 41:20 – 22; 42:1 – 43:23; 63:17 – 18; 68:15 – 69:3) Torres testified that when he arrived back at the Westside facility at the end of the workday, he saw other patchers – and other workers including insulators or sprayers – arriving at the same time. (Sec. EX 10; Torres Dep., 34:3 – 21) The Secretary will explore this and other issues during future depositions.

The above said evidence establishes that there is enough "relatively consistent" testimony, R&M Erectors, Inc., 429 F. Supp. At 771, by the workers who have – to date – been deposed to establish the hours of work for non-testifying workers. Under the FLSA, the lack of mathematical certainty as to periods and hours worked will not preclude the award of back wages. The District Court must, by necessity, make approximations and estimates. All the Westside workers worked numerous overtime hours which they were not properly compensated for. More evidence can be gathered on the above said issues as discovery proceeds.

SECRETARY'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT – Page 16 of 17

The Defendants use Daniel Solano Ayala's claim as an example of why back wages can not be awarded to non-testifying claimants. "There is, no claim made on behalf of any other claimant for that number of hours for that period of time at that rate of pay. Thus it is impossible for any other claimant to be 'representative' of Mr. Solano." Memorandum, Page 20. Daniel Solano was in Israel Ayala's drywall hanging crew and, Israel Ayala can "represent" him. The period that Mr. Solano worked and, hence his back wages, was based on information provided to the WHI by Israel Ayala. (Clark Dec. ¶16)

The Defendants are in a poor position to complain about the lack of specificity in the Secretary's back wage calculations. Had they maintained the records that the FLSA requires the back wage amounts would not be at issue. To deny back wages to the claimants for that reason would provide the Defendants with an even greater financial windfall than they already enjoy.

WHEREFORE, the Secretary requests that the Defendants' MOTION FOR SUMMARY JUDGMENT be DENIED.

RESPECTFULLY submitted this 1st day of June 2009.

        Carol A. DeDeo
        Deputy Solicitor of Labor

        Lawrence Brewster
        Regional Solicitor

        Bruce L. Brown
        Associate Regional Solicitor

By  S/ Matthew L. Vadnal
        Matthew L. Vadnal, Trial Attorney
        WSBA# 9437
        (206) 553-0940 EX 8002
        Attorneys for Plaintiff
          U.S. Department of Labor